UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHILDREN'S HEALTH DEFENSE, a non-profit organization,<br>852 Franklin Ave., Suite 511<br>Franklin Lakes, NJ 07417<br><br>          Plaintiff,<br><br>    v.<br><br>PETE HEGSETH, in his official capacity as SECRETARY OF DEFENSE,<br>1000 Defense Pentagon<br>Washington, DC 20301-1000<br><br>          Defendant. | Civil Action No. _____ |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## I.    INTRODUCTION

1.    This action, *inter alia*, challenges the Department of Defense's systematic evasion of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb et seq. (RFRA), through a two-part strategy denying religious accommodations in military vaccination requirements.

2.    First, accession ambiguity: the Department of Defense's immunization framework and accession communications send conflicting signals about whether applicants to the military can obtain religious accommodations. For example, the standard form Marine Officer Candidate School Pre-Ship Preparation Letter advises that "officer candidates with outdated/missing immunizations may be medically disqualified during in-processing if they are

1

unable to receive the required immunizations" and must, at a minimum, have completed specified childhood vaccines. However, DoDI 1300.17 specifically applies religious exemptions (accommodations) to applicants/pre-accession.

3. Second, the "empty formality"/"largely theater" process: For active-duty service members, religious accommodations are an empty formality. *Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. 1301 (2022) (Alito, J., dissenting from partial stay)[1]. A May 2025 report aggregating DoD data reported only 2% approvals (as of January 2023, with a final rate of 0.8%) for nearly 36,500 religious accommodation requests across services related to the COVID-19 vaccine mandate.[2]

4. The DoD grants medical exemptions, allowing service members to serve with accommodations such as limited deployability, duty restrictions, and medical monitoring. Yet, the DoD systematically denies religious accommodations despite the same operational impact and health risk. If service members with medical exemptions do not undermine force health

---

[1] Justice Alito quoted the district court's finding that the religious exemption procedure was "'largely theater… [and] included no fewer than 50 steps, and during the first 35 steps, none of the various officials who processed requests gave any consideration to their merit. Instead, 'a form letter rejecting each request was prepared,' and although 'more than 4,000 exemption requests had been submitted by February 15, 2022, not a single one had been approved when the complaint in this case was filed.'" *Id*. at 1303-04. The district court also called the process "an empty formality" with "predetermined" denials, findings the Fifth Circuit reviewed. *U.S. Navy SEALs 1-26 v. Biden*, 2022 WL 34443, *4 (N.D. Tex. Jan. 3, 2022), *stay denied*, 27 F.4th 336 (5th Cir. 2022). Another court found that the Army approved only 1.35 percent. *Chrisman v. Austin,* 2022 WL 19416632 at *30 (N.D. Tex. Dec. 21, 2022). Congress mooted those cases before structural remedies could be imposed per the National Defense Authorization Act for Fiscal Year 2023, Pub. L. No. 117-263, § 525, 136 Stat. 2395, 2571-72 (2022).

[2] Maracle, *Navigating Faith and Duty: Treatise on Religious Accommodations in the U.S. Military* (Duke Univ. Sanford Sch. of Pub. Pol., Consortium on Training & Talent Pol'y, May 6, 2025) (p. 3) (aggregating DoD IG and congressional data on nearly 36,500 COVID-era requests with 2% approvals as of January 2023 and a final 0.8%; hundreds of medical exemptions granted without adverse consequences). https://cttp.sanford.duke.edu/wp-content/uploads/sites/16/2025/05/Maracle-AY25-FSRP-20250407_8K.pdf

protection or readiness, then service members with religious exemptions should not do so either. This disparate treatment proves the DoD's true interest is coercing compliance with vaccination as a policy preference, not protecting military readiness, and thus violates RFRA, the Equal Protection component of the Fifth Amendment, and substantive due process.

5. Finally, in light of the Supreme Court's December 8, 2025, grant-vacate-remand order in *Miller v. McDonald*, No. 25-133 (U.S.), based on *Mahmoud v. Taylor*, 606 U.S. 522 (2025), the Defendant's religious exemption sham policies violate the First Amendment.

## II.    JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1, the Administrative Procedure Act, 5 U.S.C. §§ 702, 704, 706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. Sovereign immunity is waived by 5 U.S.C. § 702 for the non-monetary relief sought.

7. Venue is proper in this District under 28 U.S.C. § 1391(e)(1) because the Secretary of Defense performs his official duties in Washington, D.C., and the challenged vaccination policies and religious accommodation procedures were promulgated and are implemented here.

## III.    THE PARTIES

### A.    The Plaintiff

8. Plaintiff Children's Health Defense (CHD) is a nonprofit organization based in Franklin Lakes, New Jersey, dedicated to protecting medical freedom, informed consent, and religious liberty, particularly in contexts involving vaccination mandates and government coercion.

9. Although CHD's primary mission is children's health, during the pandemic, CHD's leadership decided that the attack on the rights of military personnel was so great that it was necessary to divert substantial resources from its primary mission to assist individuals serving in the military and new recruits.

10. As a result, in October 2023 CHD created a Military Chapter, "Guardians of Warriors – Champions of Health," led by former members of all branches of the U.S. Armed Forces. The Military Chapter is devoted to safeguarding the rights, health, and well-being of military service members and applicants, with particular focus on medical autonomy, informed consent, and religious freedom in the military context. https://mil.childrenshealthdefense.org/

11. Through its Military Chapter, CHD provides education, advocacy, and support to service members and their families on military vaccine mandates, religious accommodations, medical exemptions, and toxic exposures. The Chapter disseminates legal and medical information, counsels service members facing discipline for refusing unlawful orders, and educates them on navigating Department of Defense's regulatory requirements.

12. The Military Chapter has supported litigation challenging unlawful vaccine mandates and denial of religious exemptions for service members, including cases arising from the COVID-19 vaccine mandate and the unlawful administration of Emergency Use Authorization vaccines.

13. The Military Chapter also addresses a broader range of military health issues, including support for veterans under the PACT Act, education on historical vaccine injuries in the military such as anthrax and smallpox, oversight of DoD infectious-disease research and countermeasures programs, and documentation of vaccine injuries among service members through interviews, publications, and public forums. It hosts regular educational events,

including Veterans Day forums, town halls, and conferences on military medical mandates and service member rights.

14. CHD brings this action for itself and on behalf of its Military Chapter participants, whose interests in religious liberty and bodily integrity are directly implicated by the Department of Defense's vaccination policies and religious accommodation procedures as described herein.

15. The Military Chapter works with dozens of service personnel who are currently involved in administrative proceedings regarding their application for religious exemptions or for their failure to undergo required vaccination. However, these individuals are reluctant to formally join this lawsuit for fear of retaliation, or that participation in this case would adversely affect their career or their pending administrative cases. Plaintiff CHD sues on their behalf under associational standing.

**B.     The Defendant**

16. Defendant Pete Hegseth is the Secretary of Defense of the United States, sued in his official capacity. The Secretary of Defense is responsible for issuing, implementing, and enforcing Department of Defense vaccination requirements for military applicants and service members, including DoDI 6205.02, DoD Immunization Program, religious accommodation procedures under DoDI 1300.17, and other relevant sections.

17. The Secretary has authority to revise these policies and procedures to comply with RFRA, the Administrative Procedure Act, and the Constitution.

**IV.     FACTUAL BACKGROUND**

**A.     The Department of Defense Uses the CDC's Immunization Standards**

18. The Department of Defense does not maintain an independent, minimum military-specific vaccination schedule or conduct its own primary vaccine safety and efficacy

trials. Instead, it relies on and incorporates civilian public health vaccine recommendations made by the Centers for Disease Control and Prevention (CDC) and its Advisory Committee on Immunization Practices. DoDI 6205.02, sections, 1.2.a, page 3, and AR 40-562/BUMEDINST 6230.15B/AFI 48-110_IP/CG COMDTINST M6230.4G, Chapter 2, Paragraph 2-1a, page 2.

    **B.**    **The DoD's Unclear or Contradictory Regulatory Message to Applicants**

19. DoD maintains an unclear and seemingly contradictory set of regulations and communications regarding whether religious accommodations for vaccination are available to individuals who want to join the military.

20. Accession-level implementing guidance such as the standard form Marine Officer Candidates School Pre-Ship Preparation Letter, for example, informs candidates that "officer candidates with outdated/missing immunizations may be medically disqualified during in-processing if they are unable to receive the required immunizations," and that, at a minimum, they must have completed specified childhood immunizations, without any reference to RFRA or to religious accommodations for vaccines in that section of the letter. This suggests that vaccination is a medical requirement or qualification analogous to height, vision, or other physical standards, and suggests that applicants with religious objections simply do not qualify. [3]

21. However, DoD regulations include religious exemptions for applicants/pre-accession. *See* DoDI 1300.17.

22. Taken together, these regulations send irreconcilable signals about the availability of religious exemptions for applicants. Applicants cannot tell from the governing regulations

---

[3] No. 16 (page 8-9) of the Pre-Ship Preparation Letter titled "Religious Services" refers to "free exercise of religion, and at a. entitled "Religious Accommodations" does offer religious accommodations, but since it is a subparagraph of No, 16, the accommodation is limited to "Religious Services" and other subsections of this section.

6

whether they are allowed to request religious accommodations for vaccination at the accession stage, what procedures would apply, or what standards would govern. As a result, individuals with sincere religious objections to vaccination are largely deterred from pursuing military service rather than risking permanent disqualification or rejection for asserting RFRA rights. And on information and belief, those few that do make a request for accommodation are denied automatically.

23.     Plaintiff is informed and believes, and on that basis alleges, that there is no operational justification for affording service members at least theoretical access to religious accommodation procedures for vaccination, while denying or obscuring that same access to applicants.

### C.     Estimated Impact on Recruitment

24.     CDC data show that approximately 1.2 percent of U.S. children receive no vaccines by age two. Extrapolated to the national population, this represents roughly 400,000 unvaccinated minors nationwide.

25.     The Department of Defense reports that approximately 0.4 percent of Americans serve in the military at some point in their lives. Applying that enlistment rate to the unvaccinated population, 400,000 unvaccinated individuals multiplied by a 0.4 percent enlistment rate yields approximately 1,600 individuals per year who, statistically, would be expected to enter military service if they were not barred by vaccination requirements.

26.     A more generous estimate, accounting for higher enlistment rates among certain demographics that are disproportionately represented in the military, yields approximately 3,000 individuals per year who are effectively barred from service solely because of the accession vaccination policy keyed to the CDC childhood immunization schedule.

27. Many of these individuals hold sincere religious objections to some or all vaccines and otherwise possess the physical fitness, educational qualifications, and moral character to serve. They are excluded or deterred not because of any lack of aptitude or commitment to national defense, but because DoD presents vaccination as a non-accommodatable medical qualification at the accession stage and provides no clear, reliable path for religious accommodations.

28. The permanent nature of the accession vaccination policy means that this exclusion is not a one-time anomaly but a recurring barrier. Year after year, DoD's wholesale adoption of the CDC childhood immunization schedule, combined with the absence of a meaningful religious accommodation process for applicants, removes thousands of willing, qualified, religiously observant Americans from the potential recruiting pool.

### D. Existing Accommodations Demonstrate Feasibility

29. The Department of Defense currently accommodates service members who receive medical exemptions from vaccination. These service members continue to serve in a variety of billets and specialties under existing personnel and medical policies.

30. Medically exempt service members are assigned limited-deployability classifications that restrict their deployment to certain geographic areas where particular vaccines are required, such as yellow fever for deployments to parts of Africa and South America. They may also be reassigned to non-deploying or stateside roles, or to duties where vaccination status is less operationally critical.

31. In addition to duty limitations, DoD employs medical monitoring and surveillance as an accommodation. Commanders and medical personnel track the health of medically exempt service members through periodic screenings and follow-up, and in some cases use targeted,

deployment-specific vaccination if and when a service member's medical condition resolves or if a particular mission requires a discrete immunization.

32. These existing practices demonstrate that service members with medical exemptions can be integrated into the force without any undue burden and without undermining readiness or force health protection. If complete vaccination were truly indispensable, medical exemptions in service personnel would not be tolerated.

33. The same accommodations (like monitoring) that DoD already uses for medically exempt service members could be available for service members and applicants with religious objections. Operationally, service members with medical and religious exemption present identical questions about deployment, assignment, and medical monitoring, and the same tools can address both situations. (Except that in some cases, service members with a religious exemption might be healthier than the medically vaccine exempt.)

    **E.    COVID-19 Litigation Revealed RFRA Violations, But Mootness Prevented Structural Remedy**

34. The Department of Defense's approach to religious accommodations for vaccination was exposed during COVID-19 vaccine mandate litigation. Multiple federal courts found that DOD's religious-accommodation processes violated RFRA across all service branches, but Congress rescinded the COVID-19 mandate before any court could enter final judgment or impose structural reforms.

35. In *U.S. Navy SEALs 1–26 v. Biden*, 27 F.4th 336, 344, 347 (5th Cir. 2022), the Fifth Circuit cited the district court's finding that the Navy's process was "an empty formality." The Navy had received more than 4,000 religious exemption requests for the COVID-19 vaccine and granted none of them, while granting hundreds of medical exemptions, including at least 10 permanent and 259 temporary medical exemptions for active-duty sailors. *U.S. Navy SEALs 1-*

*26*, 27 F.4th at 344, 347. The court upheld a preliminary injunction for 35 Navy SEALs, finding a strong likelihood of success on their RFRA claim because the Navy failed to conduct individualized assessments and because its policy was substantially underinclusive in light of the many unvaccinated service members with medical exemptions.

36. As previously indicated, in his opinion dissenting from a partial stay, Justice Alito described the Navy's convoluted religious-accommodation process which resulted in the granting of no religious exemptions. *See* footnote 1 above at page 2.

37. The Army's record was similar. In *Chrisman v. Austin*, the court found that the Army had granted only 123 religious exemptions out of 9,068 requests, an overall approval rate of 1.35 percent and a 6.04 percent approval rate among decided requests, and that 21 percent of those approvals were given to service members already scheduled to leave the service, making those accommodations largely meaningless. No. 6:22-cv-00049, 2022 WL 19416632 at *30 (N.D. Tex. Dec. 21, 2022). The court found that the Army used boilerplate denial letters with no individualized analysis and granted a preliminary injunction based on its conclusion that the Army was systematically violating RFRA's requirement for individualized assessment.

38. The Air Force also initially granted no religious exemptions to its COVID-19 vaccine requirement, while later issuing a small number of approvals only after litigation began. *See, e.g.*, *Air Force Officer v. Austin*, No. 5:22-cv-00009 (M.D. Ga. Feb. 15, 2022) (finding the accommodation process "illusory" and granting preliminary relief). As of late 2021, across all branches, DOD had received 16,643 religious exemption requests and had granted none, while granting hundreds of medical exemptions in the same period.

39. The central factual pattern was the same in each branch: religious exemption requests were approved at rates approaching zero, denials were issued with boilerplate language

that did not reference individual beliefs or proposed accommodations, and yet large numbers of medically exempt and otherwise unvaccinated service members were allowed to remain in service. Courts repeatedly described these processes as predetermined and inconsistent with RFRA's command to conduct individualized, strict-scrutiny analysis.

40. Despite these findings, no court had the opportunity to enter a final judgment or to impose structural remedies requiring DoD to reform its religious-accommodation system. In December 2022, Congress rescinded the COVID-19 vaccine mandate in the National Defense Authorization Act for Fiscal Year 2023. Pub. L. No. 117-263, § 525, 136 Stat. 2395, 2574 (2022). That rescission mooted the pending cases, and courts dismissed them without reaching final adjudication on the merits or ordering permanent reforms.

41. As a result, DoD's underlying approach to RFRA compliance remained unchanged. The same formal procedures in DoDI 1300.17 and service-specific regulations that courts found were applied as an "empty formality" during COVID-19 remain in place today. There has been no transparent public accounting of approval and denial rates for religious accommodations across vaccines, no prohibition on boilerplate denials, no requirement for written individualized findings, and no explanation for the disparate treatment of medical versus religious exemptions.

42. This shows that the structural problems revealed during COVID-19 litigation have not been corrected. The same regulatory framework and the same practical patterns of near-zero approval, boilerplate reasoning, and predetermined outcomes continue to govern religious accommodation requests for vaccination, now applied not only to COVID-19 but to all vaccines on the CDC schedule that DoD has adopted for accessions and ongoing service.

## V.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### VIOLATION OF THE RELIGIOUS FREEDOM RESTORATION ACT

43. Plaintiff incorporates by reference all preceding paragraphs.

44. The Religious Freedom Restoration Act provides that the federal government may not substantially burden a person's exercise of religion, even by a rule of general applicability, unless it demonstrates that application of the burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000bb-1(a)–(b).

45. DoD's vaccination policies and practices substantially burden the religious exercise of Plaintiff's Military Chapter participants, both those who seek entry into the military and those who are already in service.

46. RFRA applies to vaccination requirements regardless of whether DoD labels them "medical qualifications." Vaccination is not a true physical prerequisite to service, because DoD routinely grants medical exemptions and retains unvaccinated service members with accommodations. By subjecting vaccination to exemptions and accommodations in some cases, DoD has made it a regulatory policy subject to RFRA, not an absolute medical bar.

47. DoD's accommodation processes, as applied to vaccination, do not comply with RFRA. During COVID-19 litigation, federal courts found that DoD and the services denied all or nearly all religious accommodation requests, used boilerplate templates, and failed to conduct individualized assessments, while simultaneously granting hundreds of medical exemptions to unvaccinated service members. The experience of Plaintiff's Military Chapter participants shows that these patterns continue.

48.     DoD has not carried its burden to show that denying religious accommodations for vaccination furthers a compelling interest by the least restrictive means. DoD's asserted interests in forced health protection and readiness are undermined by the existence of medically exempt and otherwise unvaccinated service members who serve under accommodations. Less restrictive means such as limited deployability, duty reassignment, medical monitoring, and deployment-specific vaccination already exist and are used for medically exempt personnel yet are withheld from religious objectors.

49.     By substantially burdening Plaintiff's Military Chapter participants' religious exercise without satisfying RFRA's strict-scrutiny standard, DoD has violated RFRA. Plaintiff seeks declaratory and injunctive relief to bring DoD's vaccination and accommodation policies into compliance with RFRA.

## SECOND CLAIM FOR RELIEF

## VIOLATION OF THE FIRST AMENDMENT

50.     Plaintiff incorporates by reference all preceding paragraphs.

51.     Military service members have a First Amendment Freedom of Religion right for an exemption/accommodation from service-required vaccination based on the Supreme Court's December 8, 2025, grant-vacate-remand order in *Miller v. McDonald*, No. 25-133 (U.S.), citing *Mahmoud v. Taylor*, 606 U.S. 522 (2025).

52.     The Defendant's vaccine exemption/accommodation sham policies violate the rights of all service members who seek an exemption/accommodation from service vaccine requirements, as well as the rights of applicants to the military because of the threshold ambiguity of whether applicants have a statutory right to a religious exemption/accommodation from vaccination requirements.

13

## THIRD CLAIM FOR RELIEF

## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

53. Plaintiff incorporates by reference all preceding paragraphs.

54. The Administrative Procedure Act ("APA") requires a reviewing court to hold unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

55. DoD's adoption of the CDC childhood immunization schedule as a mandatory accession requirement through DoDI 6205.02 is arbitrary and capricious. Plaintiff alleges that CDC has never cumulatively safety-tested the full 18-year schedule and that neither CDC nor DoD has studied the safety of compressing that schedule into a short catch-up regimen for unvaccinated adults. DOD adopted the schedule wholesale without independent military-specific safety review, without analyzing which vaccines are necessary for readiness, without considering less restrictive alternatives such as deployment-specific or role-specific vaccination, and without notice-and-comment rulemaking.

56. DoD has not provided a reasoned explanation for requiring most of the entire civilian pediatric schedule as a condition of entry into service.

57. Moreover, it is a violation of the APA for maintaining seemingly contradictory regulations that present vaccination as a non-accommodatable "medical qualification" per Marine OCS entry letters, while simultaneously providing religious-accommodation procedures without subject-matter exclusions in DoDI 1300.17.

58. In addition, DoD's systematic denial of religious accommodation requests for vaccination for service members, including near-zero approval rates during COVID-19, continued use of boilerplate denials, and the pending separation of military personnel for failure

14

to vaccinate constitutes arbitrary and capricious administration of its own policies. When an agency grants medical exemptions and allows such service members to serve, but systematically denies religious accommodations without individualized analysis or reasoned explanation, it acts without a rational connection between facts found and choices made.

59. Plaintiff seeks a declaration that DoD's accession vaccination policy, to the extent it incorporates the CDC childhood immunization schedule without independent analysis or rulemaking, and its arbitrary administration of religious-accommodation procedures, violate the APA, and an order setting aside those policies and requiring lawful rulemaking and reasoned decision-making.

## FOURTH CLAIM FOR RELIEF

### VIOLATION OF THE EQUAL PROTECTION COMPONENT OF THE FIFTH AMENDMENT

60. Plaintiff incorporates by reference all preceding paragraphs.

61. The Due Process Clause of the Fifth Amendment includes an Equal Protection component that prohibits the federal government from treating similarly situated persons differently without adequate justification.

62. DoD treats medically exempt service members differently from those who seek religious exemptions, even though they are similarly situated with respect to the government's stated interests. Many medically exempt service members need no operational accommodations at all, and others are given accommodations. Service members seeking religious exemptions are denied comparable exemptions and accommodations, and face separation instead, despite identical health risks and identical operational accommodations being available.

63. DoD also treats applicants differently from service members with respect to access to religious-accommodation procedures for vaccination. Applicants are told, through for example

OCS letters, that missing vaccines result in medical disqualification and are given no clear path to seek religious accommodations, while service members on paper may submit accommodation requests under DoDI 1300.17.

64. Both forms of different treatment burden the fundamental right to free exercise of religion and therefore trigger strict scrutiny. DoD cannot show that this disparate treatment furthers a compelling interest by the least restrictive means. Even under rational-basis review, it is irrational to claim that vaccine medically exempt personnel can be safely accommodated while insisting that identically situated religious objectors to vaccines cannot.

65. Plaintiff seeks declaratory and injunctive relief to end this unlawful disparate treatment.

## FIFTH CLAIM FOR RELIEF

## VIOLATION OF THE FIFTH AMENDMENT DUE PROCESS CLAUSE

66. Plaintiff incorporates by reference all preceding paragraphs.

67. The Due Process Clause of the Fifth Amendment protects fundamental liberty interests, including the right to free exercise of religion and the right to bodily integrity, and prohibits the federal government from depriving individuals of liberty or property without due process of law.

68. DoD's vaccination policies substantially burden these fundamental interests by conditioning military service on submission to a comprehensive, civilian-designed vaccination schedule, and, for unvaccinated adults on an intense catch-up regimen that has never been cumulatively safety-tested, despite Plaintiff's Military Chapter participants' sincere religious objections and concerns about bodily integrity. Active-duty service personnel face a choice between continued military service and adherence to their religious convictions.

69. For substantially the same reasons set forth in Claim I, DoD's policies and practices fail strict scrutiny under substantive due process. They are not narrowly tailored, because less restrictive alternatives such as limited-deployability, duty reassignment, and medical monitoring are already in use for medically exempt personnel and could be extended to religious objectors. The underinclusive treatment of medical versus religious exemptions further undermines any claim of a compelling interest.

70. Active-duty service personnel are being deprived of protected liberty and property interests in their military careers and reputations without adequate procedural safeguards. DoD has failed to provide clear, accessible procedures governing religious accommodation requests for vaccination; has relied on boilerplate denials that do not reflect individualized consideration; and has moved to separate them without a meaningful opportunity to be heard or a reasoned explanation for refusing accommodations that are granted to medically exempt service members.

71. Plaintiff seeks declaratory and injunctive relief preventing further due-process violations and halting separations undertaken without genuine RFRA-compliant review and adequate procedural protections.

## VI. CONCLUSION

72. This action seeks to vindicate the rights of CHD's Military Chapter participants by eliminating the DoD's two-pronged RFRA evasion: accession ambiguity that deters applicants, and sham processes that predetermine denials for active-duty personnel. As pled, the DoD's disparate treatment of medical versus religious exemptions defeats any compelling interest in readiness, while its wholesale adoption of the untested CDC schedule without APA-compliant review renders the policy arbitrary. The sham persists, with 2025 data showing 98 percent

17

religious denials versus routine medical grants, frustrating CHD's resource diversion to counsel affected supporters.

73. The Supreme Court's recent decisions strongly reinforce these claims and the facts demonstrate that sham religious exemption/accommodation policies violate the First Amendment. In *Mahmoud v. Taylor*, 606 U.S. 522 (2025), the Court protected parental opt-outs from curriculum burdening religious upbringing, applying strict scrutiny to neutral mandates lacking least restrictive alternatives. Based on *Mahmoud,* the Court's December 8, 2025, remand in *Miller v. McDonald*, No. 25-133 (U.S.), signals intolerance for the government's attempts to deny religious exemptions, which is exactly what is presented here in the DOD's scheme. Absent the requested relief, the DoD will continue to perpetuate the constitutional harms identified in this complaint. The Court should safeguard religious freedom in the military.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, respectfully requests that the Court enter judgment in its favor and:

1. Declare that the Religious Freedom Restoration Act applies to the Department of Defense's accession requirements, and that DoD may not avoid RFRA scrutiny by classifying vaccination as a non-accommodatable "medical qualification."

2. Declare that DoD's systematic denial of religious-accommodation requests for vaccination, its use of boilerplate denials without individualized assessment, and its refusal to consider less restrictive alternatives violate RFRA.

3. Declare that the sham proceedings used by the military to deny religious exemptions/accommodations violate the First Amendment.

4. Declare that DoD's disparate treatment of medical exemptions and religious objections to vaccination, and its disparate treatment of applicants and service members with respect to

18

access to religious-accommodation procedures, violate RFRA and the Equal Protection component of the Fifth Amendment.

5. Declare that DoD's wholesale adoption of the CDC childhood immunization schedule as an accession requirement, without independent safety review, military-specific justification, consideration of alternatives, or notice-and-comment rulemaking, is arbitrary and capricious and violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

6. Declare that separating service members for alleged non-compliance with vaccine mandates without first providing genuine individualized RFRA assessment and adequate procedural protections violates RFRA and the Due Process Clause of the Fifth Amendment.

7. Permanently enjoin DoD from treating vaccination as a *per se* non-accommodatable medical qualification at the accession stage, and require DOD to make religious accommodation procedures for vaccination available to applicants under the standards that apply to service members under DoDI 1300.17 and related regulations.

8. Order DoD to extend to religious objectors, where feasible, the same categories of accommodations already afforded to medically exempt personnel, including limited deployability classifications, duty reassignments, medical monitoring, and deployment-specific vaccination, and to cease policies or practices that categorically deny such accommodations to religious objectors while granting them to medically exempt service members.

9. Order structural relief requiring DoD to adopt and implement clear written procedures for processing religious accommodation requests related to vaccination, including reasonable

timelines, requirements for individualized written findings, a prohibition on boilerplate denials, periodic public reporting of approval and denial statistics by vaccine, component, and status (applicant versus service member), and explicit protections against retaliation for requesting accommodations or participating in this litigation.

10. Set aside, pursuant to the APA, DoD's incorporation of the CDC childhood immunization schedule as a mandatory accession requirement to the extent it was adopted without independent analysis or rulemaking, and require that any future vaccination requirements imposed as conditions of military service be promulgated through lawful notice-and-comment rulemaking supported by a reasoned, military-specific safety and necessity analysis.

11. Award Plaintiff costs and reasonable attorneys' fees as permitted by law, and grant such other and further relief as the Court deems just and proper.

Dated: December 16, 2025

<div style="margin-left: 50%">

Respectfully submitted,

/s/ Richard Jaffe
RICHARD JAFFE, ESQ.
428 J Street, 4th Floor
Sacramento, California 95814
Tel: 916-492-6038
Fax: 713-626-9420
rickjaffeesquire@gmail.com

CA Bar No. 289362
DC District Court ID No. CA00224

Attorney for Plaintiff

</div>