UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHILDREN'S HEALTH DEFENSE;
LIEUTENANT COLONEL BENJAMIN D. LEIBY;
STAFF SERGEANT BRITTANY N. PUCKETT;
MAJOR BRENNAN S. SCHILPEROORT,

Plaintiffs,

v.

PETE HEGSETH,
Secretary of Defense;
TROY E. MEINK,
Secretary of the Air Force; and
JOHN J. DEGOES,
Surgeon General of the Air Force,

Defendants.

Civil Action No. 1:25-cv-04363-ACR

**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs file this First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2), with the written consent of Defendant Hegseth.

## I. INTRODUCTION

1. This action was initially brought by Children's Health Defense. This First Amended Complaint adds as plaintiffs three active-duty service members, each of whom submitted a religious accommodation request from a vaccination requirement and each of whom has been injured by the Air Force's handling of it. The Air Force ran that process to its end once, against Major Brennan Schilperoort, and its own Inspector General, Review Boards Agency, and Board for Correction found the result, a reprimand, a discharge board, and months in a no-pay status, unlawful. The other two are still inside the process. Lieutenant Colonel Benjamin Leiby's request was recommended for approval in December 2023 and has never been decided.

Staff Sergeant Brittany Puckett's appeal has sat undecided before the Air Force Surgeon General for more than nine months, past the deadline the regulation sets. Days before this filing, the Air Force's personnel system reported that she had no active cases, and a chaplain gave her blank templates and told her to start over.

2. The governing regulatory framework can be summarized as follows: The Department of Defense Instruction 1300.17 governs requests for religious accommodation from military duties. The Air Force administers immunizations under Air Force Instruction 48-110_IP and adjudicates religious accommodation requests under Department of the Air Force Instruction 52-201. That instruction directs that commanders "will approve" a request unless a compelling governmental interest exists and requires that any restriction employ the least restrictive means, ¶ 2.4 (T-0); provides that the Department "will approve" a request unless it "would have a real (not theoretical) adverse impact" on military readiness, unit cohesion, good order, discipline, health, or safety, ¶ 2.3; identifies the approval and appeal authorities, including the Surgeon General as final appeal authority for immunization exemptions, ¶ 3.2, Table 6.1 (23 June 2021); and prescribes the procedures governing religious-accommodation requests. That instruction governed the adjudication of each individual Plaintiff's request through May 13, 2026.

3. On May 14, 2026, Guidance Memorandum GM2026-01 amended DAFI 52-201, eliminating Religious Resolution Teams and requiring a written Record of Decision for every request, whether approved or denied. GM2026-01, Attach. 2, ¶¶ 1.1.6, 1.1.7. The memorandum further directed that pending religious accommodation packages in process below Headquarters Air Force "be returned to the requestor for resubmission," and that packages "which have reached HAF for decision will be completed without re-submission." GM2026-01, Attach. 1, ¶

A1.3.1. Lieutenant Colonel Leiby's request and Staff Sergeant Puckett's appeal were both pending on that date.

**Summary of the claims**

4. Count I asks the Court to compel two decisions. The Air Force has not concluded Lieutenant Colonel Leiby's request, pending since May 2023, or Staff Sergeant Puckett's appeal, pending before the Surgeon General since October 2025. The Administrative Procedure Act authorizes this Court to compel action unlawfully withheld or unreasonably delayed. 5 U.S.C. §§ 555(b), 706(1). The relief sought is an order that the agency decide within a time the Court sets. Plaintiffs do not ask the Court to say how either matter should be decided.

5. Count II states a claim under the Religious Freedom Restoration Act ("RFRA"). The Air Force cannot carry its claimant-specific burden as to any of these Plaintiffs, and its own records show why. Its review team found that less restrictive means existed for Lieutenant Colonel Leiby. Staff Sergeant Puckett's squadron commander corrected the record to state that the accommodation could, not would, affect the unit, and that no impact had in fact occurred, while the regulation permits denial only on a real, not theoretical, adverse impact. Where the Air Force has denied these requests, it has employed formulaic least-restrictive-means conclusions across materially different claimants, vaccines, duties, and assignments.

6. Count III states a claim under the Free Exercise Clause, and in the alternative as to Major Schilperoort under the equal protection component of the Fifth Amendment. The Air Force administers its immunization requirement through a standing mechanism of individualized exemption, granting medical exemptions on a clinical assessment of the particular member and administrative exemptions for individual circumstances. It defers members from worldwide duty for twelve months after the birth of a child by operation of its own instruction, with no

adjudication at all. DAFI 36-2110 ¶ 6.18.4 (T-1). It carries Staff Sergeant Puckett unvaccinated in her assignment while granting her no waiver and deciding nothing. A rule administered through discretionary, individualized exemptions is not generally applicable, and the Air Force may not withhold that mechanism from religious hardship without satisfying strict scrutiny.

7. Plaintiffs plead no claim under 5 U.S.C. § 706(2) as to the pending request and the pending appeal for which adjudicatory relief is sought, because the prescribed process has produced no final, reviewable decision on either.

## II. PARTIES

### A. Plaintiffs

8. Plaintiff Children's Health Defense is a nonprofit corporation organized under the laws of New Jersey, with its principal place of business in Franklin Lakes, New Jersey. Its mission includes the protection of religious liberty and informed consent. It provides information about vaccine issues through a variety of media, and supports religious accommodations to mandatory vaccination. It maintains a Military Chapter which advocates for and protects the rights of service members. This lawsuit is a prime example of its advocacy.

9. Plaintiff Benjamin D. Leiby is a Lieutenant Colonel in the United States Air Force, serving as a Senior Mobility Analyst at United States Transportation Command. His religious accommodation request as to the influenza and tetanus-diphtheria vaccines, submitted May 29, 2023, and unanimously recommended for approval by a Religious Resolution Team on December 21, 2023, has never been decided. He has submitted three such requests since 2021, and none has been adjudicated on the merits. He remains subject to the tetanus-diphtheria requirement and is carried on a temporary administrative exemption that expires in September 2026.

10. Plaintiff Brittany N. Puckett is a Staff Sergeant in the United States Air Force, a Survival, Evasion, Resistance, and Escape specialist assigned to the 317th Operations Support Squadron at Dyess Air Force Base, Texas. Her February 6, 2025 religious accommodation request as to all required vaccinations was denied on October 7, 2025, and her appeal from that denial has been pending before the Air Force Surgeon General since October 8, 2025, and remains undecided. She holds no approved exemption of any kind: the medical exemption she sought on the basis of her pregnancy was denied.

11. Plaintiff Brennan S. Schilperoort is a Major in the United States Air Force and a C-130J pilot assigned to the 19th Airlift Wing at Little Rock Air Force Base, Arkansas. On September 28, 2023, the Air Force Surgeon General granted him a religious accommodation for the tetanus-diphtheria vaccine and denied him one for the influenza vaccine in the same memorandum. In December 2023, his commander refused to process his new religious accommodation request and reprimanded him for declining the vaccine while that request sat undecided. Plaintiff Schilperoort participates in the activities of CHD's Military Chapter.

**B. Defendants**

12. Defendant Pete Hegseth is the Secretary of Defense and is sued in his official capacity. He is responsible for the Department of Defense's immunization requirements, including Department of Defense Instruction 6205.02, and for the religious accommodation framework set out in Department of Defense Instruction 1300.17.

13. Defendant Troy E. Meink is the Secretary of the Air Force and is sued in his official capacity. He is the head of the Department of the Air Force and is by statute responsible for and has the authority to conduct all of its affairs. 10 U.S.C. § 9013(b); see *also id*. § 9013(a)(1), (f), (g)(3). Department of the Air Force Instruction 52-201 and Guidance

Memorandum GM2026-01 are issued under his authority, and the officials who decide religious accommodation requests do so under authority that he delegates and may withdraw. 10 U.S.C. § 9013(f); DAFI 52-201 ¶ 6.9.1.

14. Defendant John J. DeGoes is the Surgeon General of the Air Force and is sued in his official capacity. Under Table 6.1 of DAFI 52-201 and paragraph 3.2 of that instruction, the Surgeon General is the final appeal authority for all denials of religious accommodation requests about immunization exemptions. Staff Sergeant Puckett's appeal, filed October 8, 2025, is pending before him.

15. Each individual Plaintiff's accommodation request arises under, and each denial or non-decision was governed by, policies these Defendants issue, administer, and may revise.

## III. JURISDICTION AND VENUE

16. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.*, the Administrative Procedure Act, 5 U.S.C. §§ 701 through 706, and the First and Fifth Amendments.

17. The United States has waived sovereign immunity for the relief sought. Section 702 of the Administrative Procedure Act waives immunity for actions seeking relief other than money damages against an agency or an officer thereof acting in an official capacity, and that waiver is not limited to claims brought under the Administrative Procedure Act itself. *Trudeau v. FTC*, 456 F.3d 178, 186–87 (D.C. Cir. 2006). The Religious Freedom Restoration Act independently permits a person whose religious exercise has been burdened to obtain appropriate relief against the Government, and defines "government" to include an official of the United States. 42 U.S.C. §§ 2000bb-1(c), 2000bb-2(1).

18. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202. Injunctive relief compelling agency action unlawfully withheld or unreasonably delayed is authorized by 5 U.S.C. § 706(1), including to enforce the duties imposed by Department of the Air Force Instruction 52-201 and by 5 U.S.C. § 555(b). Injunctive relief is separately authorized by 42 U.S.C. § 2000bb-1(c) and by the equitable power of this Court.

19. Venue is proper in this district under 28 U.S.C. § 1391(e)(1)(A). Defendants are officers of the United States sued in their official capacities. Defendant Hegseth is the Secretary of Defense; he maintains his official office in this district and performs substantial official duties here, including as a member of the President's Cabinet and of the National Security Council. Defendant Meink is the Secretary of the Air Force and Defendant DeGoes is the Surgeon General of the Air Force; each performs substantial official duties in this district. No real property is involved in this action.

20. Plaintiffs exhausted the administrative remedies available to them. Each individual Plaintiff submitted one or more religious accommodation requests through the process the Department prescribes. Lieutenant Colonel Leiby has received no decision on the request he filed in May 2023. Staff Sergeant Puckett has received no decision on the October 2025 appeal she filed with the final appeal authority the regulation designates. No further step within the Department is available to a member whose request or appeal is neither granted nor denied.

## IV. STATEMENT OF FACTS

### A. Lieutenant Colonel Benjamin D. Leiby

21. Lieutenant Colonel Benjamin D. Leiby is an active-duty officer of the United States Air Force serving as a Senior Mobility Analyst at United States Transportation Command. He holds a Doctor of Philosophy. During the events relevant here he served as a doctoral student

at the Air Force Institute of Technology, Wright-Patterson Air Force Base, Ohio; as Chief of the Business Analytics Branch at the Air Force Manpower Analysis Agency, JBSA-Randolph, Texas; and as acting Chief of the Operations Assessment Branch at the 609th Air Operations Center, Shaw Air Force Base, South Carolina. He held the rank of Major when he first sought the accommodation described below and has since been promoted to Lieutenant Colonel.

22. Lieutenant Colonel Leiby is a Christian raised in the Baptist tradition. His religious objection to vaccination rests on conscience and stewardship: he believes he is obligated to maintain a clear conscience before God and to steward his body according to his convictions, and that being compelled to receive these vaccines would require him to act against his relationship with God. His objection is one of conscience.

**The influenza and Td request that has never been adjudicated**

23. Lieutenant Colonel Leiby first sought religious accommodation from vaccination requirements in 2021. Over the following years, he underwent four separate chaplain interviews and submitted multiple religious accommodation requests as to the influenza and tetanus-diphtheria (Td) vaccines. None was ever adjudicated on the merits by the deciding authority. As he described the process contemporaneously in February 2025: he had "gone through 4 chaplain interviews and 3 flu RAR submissions," and "[n]one of them were adjudicated by the MAJCOM; just left pending approval," even though "[t]he AFI does state 60 days" for a decision.

24. His first requests, initiated at the Air Force Institute of Technology, were required to be split into separate submissions by vaccine, and were left undecided by his major command before an ordered permanent change of station. On each of those earlier occasions he was

directed to resubmit under his new command, and he received no written disposition, no grant, denial, return, or closure of any of the requests he had filed.

25. On May 29, 2023, Lieutenant Colonel Leiby submitted a religious accommodation request as to both the influenza and Td vaccines to the commander of the Air Force Manpower Analysis Agency. He completed a chaplain interview in support of the request and acknowledged counseling from his commander on September 13, 2023. On December 21, 2023, the Religious Resolution Team completed its review and unanimously recommended approval. In a memorandum to all reviewing authorities, the team stated that "[a]ll members of the RRT recommend that you approve Applicant's accommodation request relating to the following vaccines: Influenza & Tetanus-Diptheria (Td) due to there being less restrictive means than the vaccines available to accomplish the Government's compelling interest."

26. Notwithstanding that unanimous recommendation of approval, and the team's express finding that less restrictive means existed, no decision issued. Lieutenant Colonel Leiby executed a directed permanent change of station to United States Transportation Command on or about April 1, 2026, again before any decision issued. To this day the Air Force has never told him what became of the May 29, 2023 request. He has received no memorandum granting it, denying it, returning it, or closing it.

27. Lieutenant Colonel Leiby's current posture reflects the same cycle. The influenza requirement has recently lapsed. He remains subject to the Td requirement, and he is carried on a temporary exemption for it that expires in September 2026. His immunization-readiness status is presently green, and no order or deadline to receive the vaccine is outstanding. When the exemption expires, he will be required to submit a new religious accommodation request, which he has already prepared, and he expects the issue to arise again in October 2026. His

understanding that the May 29, 2023 request is effectively dead rests on inference alone: no decision authority has ever informed him of any disposition of it.

28. The pattern is one of a request filed, supported by chaplain endorsement and, ultimately, by a Religious Resolution Team's unanimous recommendation of approval, then left without any decision and without any written disposition, so that the member is neither granted his accommodation nor given a denial he can appeal, but is left to guess where he stands. Meanwhile Lieutenant Colonel Leiby has been carried on short-term exemptions that repeatedly lapse and must be renewed; on at least one occasion his exemption expired while his request sat undecided, requiring him to seek renewal so that his immunization-readiness status could be corrected for deployment eligibility under a tasked deployment. He understood, correctly, that under Air Force policy he remained exempt from the vaccinations while his request was pending.

29. The regulation did not permit that limbo. DAFI 52-201 required the deciding authority to render a decision and to notify Lieutenant Colonel Leiby of it in writing, within the periods Table 2.1 fixes. Guidance Memorandum GM2026-01 required, for any request pending on May 14, 2026, that the Air Force either complete it if it had reached Headquarters Air Force or return it to him for resubmission if it had not, and in either case required a written Record of Decision. The Air Force did neither, and issued no writing of any kind. Its failure to dispose of the request as the regulation requires is the agency action unlawfully withheld.

**The COVID-19 denial**

30. Lieutenant Colonel Leiby's separate COVID-19 request was denied by the Air Education and Training Command commander on August 26, 2022. That denial found his belief sincere but concluded, in the Air Force's standard formulation, that the request "does not meet the threshold" and that no lesser means would satisfy the Government's interest, reciting his

duties as an Air Force Institute of Technology doctoral student and asserting that an exemption would cause “dissention” and “the perception of favoritism.”

**Deployment and assignment consequences**

31. Lieutenant Colonel Leiby’s vaccination status has affected his assignments and deployability. On January 31, 2022, he was notified of an assignment to follow his doctoral graduation that September. On May 2, 2022, that assignment was cancelled, and his record carried an availability code during this period. In August 2022, anticipating graduation without a follow-on assignment, he offered to fill a vacant deployment requirement but was unable to deploy while the code remained in place. An alternate assignment was granted after graduation, and he changed duty stations on or about March 8, 2023.

32. In December 2024, Lieutenant Colonel Leiby was notified of a deployment associated with the 609th Air Operations Center at Shaw Air Force Base. His immunization-readiness status was then marked deficient for both influenza and Td. In late February 2025 he struggled to obtain medical clearance to deploy because of his immunization status. Only after his commander, a chaplain, and a judge advocate became involved did medical personnel update his readiness status by granting a temporary administrative exemption for both influenza and Td, allowing him to deploy on time.

**B. Staff Sergeant Brittany N. Puckett**

33. Staff Sergeant Brittany N. Puckett is a Survival, Evasion, Resistance, and Escape (SERE) specialist (Air Force Specialty Code 1T0X1) on active duty in the United States Air Force. She has served since September 2014, most recently with the 27th Special Operations Support Squadron at Cannon Air Force Base, New Mexico, and now with the 317th Operations Support Squadron at Dyess Air Force Base, Texas, following her authorized permanent change

of station from Air Force Special Operations Command to Air Mobility Command in January 2026. Her enlistment was scheduled to end in June 2026. She reenlisted, and she remains on active duty and subject to the vaccination requirements at issue in this action.

34. Sergeant Puckett is a Christian. She describes her faith as holistic Christianity: she believes God heals through natural means, and that introducing into her body substances she regards as defiling it violates her obligations to her Creator. She does not take medications except in a life-or-death situation. On that basis she objects to vaccination, and she has received no vaccine of any kind in approximately five years. The Air Force's own reviewing chaplain, medical provider, and squadron commander each found her belief sincere.

**The request that the Air Force has never finally decided**

35. Sergeant Puckett submitted the request that is now on appeal on December 16, 2024. It required amendments, and the assistance she needed to complete them was not available to her over the holidays. She submitted the final version on February 6, 2025. The request sought exemption from all required vaccinations, including influenza, encephalitis, tuberculosis, anthrax, and diphtheria. Her chaplain, after a formal interview, found the request rested on sincerely held religious belief and recommended approval. Her flight surgeon recommended approval and identified less restrictive means, including masking and telework, addressed to respiratory transmission. Her squadron commander recommended approval in a memorandum for record.

36. The 27th Special Operations Wing Religious Resolution Team met on March 21, 2025, and voted to disapprove the request. In the advisement it forwarded up the chain of command, the Team recorded that although the squadron commander had recommended approval of the request in his memorandum for record, he had relayed to the Team that the

requirements for Sergeant Puckett's workplace duties "would be affected or hinder the mission for the squadron and its impact on readiness, morale, good order/discipline, or health/safety of the unit if the accommodation is approved," and that he "disapproved the request at the RRT session."

37. The squadron commander wrote to correct that record. In a memorandum for record dated May 22, 2025, addressed to the 27th Special Operations Wing Chaplain, Lt Col Travis S. Slone wrote: "I believe my earlier statement that it 'would' impact these areas was not accurately represented." He continued: "While her request for accommodation could affect the unit in those ways, there has been no such impact since she began her request." He confirmed that his "agreement with the RRT's recommendation to disapprove her request does not indicate a change in my position from what I expressed at the RRT," and stated that he "continue[s] to fully support SSgt Puckett in her beliefs and will advocate for accommodation throughout the appeals process."

38. The distinction the squadron commander drew is the distinction the regulation turns on. DAFI 52-201 provides that commanders "may only impose limits on such expressions when there is a real (not theoretical) adverse impact" on readiness, unit cohesion, good order and discipline, or health and safety, ¶ 2.1 (T-0), and directs that the Air Force "will approve" a request unless the accommodation "would have a real (not theoretical) adverse impact" on those interests, ¶ 2.3. The Religious Resolution Team's advisement recorded the commander as having said the accommodation "would" have that impact, the version the regulation treats as real. He wrote that he had said only that it "could," the version the regulation treats as theoretical, and that no impact had in fact occurred. The Air Force denied Sergeant Puckett's request on the record the Team had created, and it has left her appeal undecided.

39. The wing commander denied it on May 16, 2025. The Air Force Special Operations Command commander, as the decision authority, denied it on October 7, 2025, in a memorandum stating that the mandated vaccinations “are necessary for the health and safety of the force, and no less restrictive means are possible.” That conclusion issued notwithstanding the contrary recommendations of the chaplain, the flight surgeon, and the squadron commander, and notwithstanding the squadron commander’s written correction of the very record on which it rested.

40. On October 8, 2025, the day after the denial, Sergeant Puckett timely appealed to the Air Force Surgeon General, the final appeal authority for immunization accommodation decisions under DAFI 52-201, Table 6.1 and paragraph 3.2. She filed the appeal through her chain of command as the denial required. The Air Force Surgeon General has never responded to or decided her appeal. Paragraph 2.10 of the instruction requires that the appeal be resolved no later than thirty business days after her written notification of intent to appeal, and designates that requirement T-1. On July 21, 2026, a chaplain asked Sergeant Puckett to check the virtual Military Personnel Flight case-management system for pending actions; it reported that she had no active cases. On July 22, 2026, the same chaplain advised her that under Guidance Memorandum GM2026-01 any request not then at Headquarters Air Force was to be resubmitted under the new process, and provided her the new templates. That memorandum requires that pending packages below Headquarters Air Force "be returned to the requestor for resubmission," and that packages which have reached Headquarters Air Force "be completed without re-submission." GM2026-01, Attach. 1, ¶ A1.3.1. The Air Force has done neither. It has not decided Sergeant Puckett's appeal, and it has not returned it to her in writing.

**Earlier requests, and one she learned of seventeen months late**

41. The current appeal is the culmination of a years-long sequence in which the Air Force did not decide Sergeant Puckett's requests. She filed religious accommodation requests in 2021, 2022, and 2023, and received no relief on any of them. One was reviewed and disapproved by a Religious Resolution Team in May 2023, but she was not notified of the disapproval until October 2024, roughly seventeen months later, and was thereby deprived of any opportunity to appeal it. Her requests were processed under procedures that changed with successive changes of command.

**The denials were processed as templates, not as individualized assessments**

42. The Air Force's own records show that the denials were processed as templates rather than as the individualized assessments the regulation requires. The wing commander's denial referred to Sergeant Puckett's vaccination request as a "beard waiver." The Religious Resolution Team's advisement recommended that "specific limiting factors or contingencies regarding the wear of a beard be annotated in the waiver." The staff judge advocate's legal review acknowledged that the Team "inadvertently includes the following sentence that is not applicable to this RAR," quoting the same beard-waiver language, and the denial issued with the language in it anyway. Sergeant Puckett's own appeal identified the error, noting that the denial "referenced my request as a 'beard waiver'" and that the denials were "'canned responses,' not considering my request on an individual basis."

43. The adjudicative record also rests in part on a criterion the law does not permit. The Religious Resolution Team's advisement records that the Deputy Wing Chaplain determined the request was based on specific doctrine "but it did not mention the necessity of practicing within a faith community," and that this "does not meet the DoD requirements for religious

accommodation." Four paragraphs later the same memorandum records that the Team "determined that this request was both sincere and religious in nature." Neither the statute nor the regulation conditions religious exercise on communal worship.

**The Air Force excuses Sergeant Puckett from requirements it will not decide, and grants secular deferments it never adjudicates**

44. Sergeant Puckett holds no approved exemption of any kind, and never has. She sought a medical exemption while a cardiac condition was under investigation; her chain of command removed her from the immunization-readiness-due list pending a formal diagnosis, but no medical exemption was ever granted, and the diagnosis was negative. She is now pregnant, and during her current pregnancy (her prior pregnancy is discussed below at ¶¶ 47-48), she sought a medical exemption from the tetanus-diphtheria vaccine, the only vaccine presently due for her, on the basis of that pregnancy. The Air Force denied it, on the ground that pregnancy is not a listed contraindication for that vaccine, and that qualifying contraindications are limited to matters such as allergy, family history, and prior adverse reaction.

45. Her chain of command has nonetheless removed her from the immunization-readiness-due list, for her pregnancy and for her pending religious accommodation request alike, although she holds no approved waiver for either. Thus, the Air Force is willing to carry Sergeant Puckett unvaccinated, in her assignment, performing her duties, without enforcing the vaccination requirement against her. It has simply declined to grant her anything, to record the accommodation in any document, or to decide her request.

46. The Air Force also excuses members from worldwide duty for reasons having nothing to do with religion, and does so categorically. Under Department of the Air Force Instruction 36-2110, a pregnant service member in a mandatory permanent-change-of-station

status "will not be reassigned . . . [t]o any overseas location (long or short tour)." DAFI 36-2110 ¶ 6.18.3.1 (T-1). And "[d]uring the 12-month period after the birth of a child to a service member, deferment from PCS is authorized." Id. ¶ 6.18.4 (T-1). That twelve-month deferment "also applies to any TDY," and it belongs to the member: "[t]he military mother may waive this deferment." *Id.*

47. Sergeant Puckett's prior pregnancy illustrates the contrast. She was assigned an Assignment Limitation Code "A" in December 2024, disqualifying her from worldwide duty, including permanent change of station and deployment, on the basis of that pregnancy. She delivered in September 2025, and the twelve-month post-birth deferment attached by operation of the instruction. Neither step required an accommodation request, a chaplain interview, a multidisciplinary review team, a wing commander endorsement, a major-command decision, or an appeal, and no one but Sergeant Puckett could waive the deferment.

48. The Air Force designates the twelve-month post-birth deferment a T-1 compliance requirement. DAFI 36-2110 ¶ 6.18.4. It designates the thirty-business-day deadline for resolving a religious accommodation appeal a T-1 compliance requirement as well. DAFI 52-201 ¶ 2.10. Both obligations ran during the same period: the deferment attached automatically on her September 2025 delivery, and her religious accommodation appeal was filed on October 8, 2025. The Air Force honored the first without Sergeant Puckett having to ask. It has not honored the second during the more than nine months since Sergeant Puckett filed her appeal, and it has offered her no explanation for the failure.

**The 2022 vaccination order and the discipline that followed**

49. On June 13, 2022, Air Force Special Operations Command ordered Sergeant Puckett to receive a COVID-19 vaccine "with full licensure approval from the FDA." She went

to the base immunization clinic and was told it had no fully licensed vaccine. She asked the Chief of Aerospace Medicine when the clinic would obtain one, and requested a temporary administrative exemption for lack of supply. Her squadron commander reinstated the order on July 7, 2022, and in doing so confirmed what she had said: he wrote that the base immunization clinic and the clinics around Clovis "only carry the EUA versions," that Department of Defense guidance "counts the brand name and EUA vaccines as the same," and that if she wished to receive the licensed product she could take a day of leave and drive to a public health office in Portales, New Mexico. The Air Force ordered her to receive a vaccine it acknowledged it did not have, and told her to go find it herself.

50. The Air Force disciplined her three times over the vaccine and over her having spoken about it. In October 2021, her squadron commander issued her a Letter of Counseling, charged under Article 92, for social-media posts in which she had shared the Air Force's own instruction on immunizations and had explained to other airmen how to file a religious accommodation request. On June 13, 2022, her commander issued her a Letter of Reprimand for not having received the vaccine. On August 30, 2022, he issued her a second Letter of Reprimand, this one under Article 89 for disrespect toward a superior commissioned officer, on the basis of an email in which she had told the Chief of Aerospace Medicine that the fully licensed and emergency-authorized products were not legally interchangeable and that it was his duty to decline an unlawful order. The reprimand quoted her words back to her. She apologized and asked that her response be filed with it. It was sustained and remained in her records for two years.

**Concrete consequences**

51. The Cannon Air Force Base COVID-19 guidance order in effect during 2022 restricted official and unofficial travel by vaccination status. Sergeant Puckett recorded at the time the assignments and courses she was unable to attend, among them a diving course, a combat search-and-rescue exercise, a joint special-operations exercise, and the Air Force Weapons School. She was denied the opportunity to submit a Stripes for Exceptional Performers promotion package despite recognition as Pro Performer NCO of the Year; her supervisor told her that promoting a member perceived as fighting against a lawful order would reflect poorly on the Air Force. Throughout, she performed at a high level, scoring no less than 97.6 percent on fitness assessments, earning individual and team awards and recognition from her major-command and combatant-command leadership, including for evacuating personnel after a CV-22 hard landing, and building parachuting and combative programs at two installations.

**C. Major Brennan S. Schilperoort**

52. Major Brennan S. Schilperoort is a senior C-130J pilot on active duty in the United States Air Force, assigned to the 19th Airlift Wing at Little Rock Air Force Base, Arkansas, where he serves as the Wing Crisis Action Team Executive Officer. He has served approximately eighteen years, formerly as a Remotely Piloted Aircraft pilot in Air Force Special Operations Command and now as a Mobility pilot in Air Mobility Command. He holds sincere religious beliefs, grounded in his Christian faith, that forbid him to receive the vaccines at issue. He has received no vaccine of any kind since 2021.

53. The Air Force has already accommodated Major Schilperoort's religious objection. On September 28, 2023, the Air Force Surgeon General approved his religious

accommodation as to the tetanus-diphtheria vaccine and denied it as to the influenza vaccine, in a single memorandum, on the same religious belief.

**The 2021 COVID-19 denial**

54. In 2021, Major Schilperoort submitted a religious accommodation request as to the COVID-19 vaccine. While it was pending, his squadron commander barred him from flying. Paragraph 2.12 of instruction DAFI 52-201 exempted him from the immunization while his request was pending, and paragraph 1.3 forbids the use of a member's expression of sincerely held religious belief as the basis for adverse personnel, promotion, schooling, training, or assignment decisions. Any operational restriction imposed on account of his unvaccinated status remained subject to the Religious Freedom Restoration Act, to paragraph 1.3, and to the instruction's requirement of an individualized assessment of any real, non-theoretical adverse impact on readiness, unit cohesion, good order and discipline, or health and safety. No such individualized assessment was made.

55. The Air Force barred Major Schilperoort from the C-130J cockpit on account of his unvaccinated status, and permitted him throughout the same period to fly the simulator alongside other aircrew, through his last simulator flight on July 27, 2023. Its own practice thus treated his unvaccinated status as disqualifying in the aircraft and unremarkable in the simulator bay, where the same personnel trained together in the same enclosed space.

56. In April 2022, Major Schilperoort joined the *Doster v. Kendall* litigation as an intervening plaintiff, and the preliminary injunction in that case halted his threatened separation. See *Doster v. Kendall*, 596 F. Supp. 3d 995 (S.D. Ohio 2022) (No. 1:22-cv-00084). That injunction was later dissolved following rescission of the COVID-19 vaccination requirement.

57. Upon the final denial of his COVID-19 request, and before the preliminary injunction in that case took effect, Major Schilperoort was offered voluntary separation in lieu of punishment. He accepted. The Air Force Personnel Center then denied the separation, citing a shortage of pilots. He was not permitted to fly, and he was not permitted to leave.

**The Surgeon General grants one accommodation and denies another, in the same memorandum**

58. On December 8, 2022, Major Schilperoort submitted a religious accommodation request for the influenza and Td vaccines. The Air Mobility Command commander denied the request on March 3, 2023. He appealed. On September 28, 2023, as later described by the Board for Correction of Military Records, Lieutenant General Robert I. Miller, the Surgeon General, "partially approved the appeal by granting an exemption from the Tetanus-Diphtheria vaccine, but not the Influenza vaccine." The approval was not categorical. The Surgeon General tailored it to Major Schilperoort's individual circumstances, conditioning it on his not being tasked to travel to austere locations. He thus conducted the individualized assessment the Religious Freedom Restoration Act requires, and fashioned a less restrictive means, as to one vaccine, in the very document in which he declined to do either as to the other. The religious belief was the same. The claimant was the same. The decisionmaker was the same. The date was the same.

**The 2023 flu medical-exemption refusal**

59. In November 2023, Major Schilperoort presented his flight surgeon with a flu-antibody titer result reflecting natural immunity, and requested a medical exemption from the influenza vaccine based on that immunity and on a prior severe adverse reaction that had left him bedridden for several days. The base chief medical officer declined to grant the exemption unless he had sustained a life-threatening anaphylactic reaction.

**The 2023 refusal to process his religious accommodation request, and the 2024 reprimand**

60. On December 4, 2023, Lieutenant Colonel Willie W. Lloyd Jr., the commander of the 41st Airlift Squadron, ordered Major Schilperoort in writing to receive the influenza vaccine within seven calendar days. Two extensions followed. On December 27, 2023, Major Schilperoort submitted a religious accommodation request seeking exemption from all required vaccines. His commander did not process it. He knew of it: he wrote later that Major Schilperoort "notified me on 29 Dec 23 that he would not comply with the order." Instead of processing the request, on January 5, 2024, the commander issued Major Schilperoort a Letter of Reprimand under Article 92 for declining the vaccine while the request sat unadjudicated. That Letter of Reprimand became the sole basis for a referral officer performance brief, a "do not promote" recommendation and, ultimately, discharge proceedings, and loss of pay.

61. The commander later acknowledged in writing that the reprimand had been issued without the documentary basis the regulation requires. Major Schilperoort's Area Defense Counsel advised the commander on January 23, 2024, that the Letter of Reprimand was legally insufficient because, under DAFI 36-2907 ¶ 2.4.2.6, a reprimand "will include and list as attachments: relevant statements, portions of investigations, reports, and other documents that serve, in part or in whole, as the basis for the letter." The commander upheld the reprimand anyway on February 1, 2024. On April 7, 2024, he issued a memorandum conceding that his "original LOR did not include any attachments to support the LOR," stating that he "could have included" his written order to vaccinate and Major Schilperoort's response to it, and supplying five documents after the fact. The commander thus reprimanded Major Schilperoort for declining a vaccine, upheld the reprimand on review, and only then assembled the record that was supposed to have supported it.

62. The commander's own adverse-actions manager documented that the reprimand was processed outside the procedure the regulation requires. In a memorandum for record dated February 23, 2024, Amanda Ventura, the 41st Airlift Squadron's Adverse Actions Manager, wrote that her purpose was "to document the reasoning in the delay greater than 14 days between the date of the LOR and the date the DAF Form 1058 was completed." She wrote that the reprimand had issued on January 5, 2024, but that she "was not made aware of the existence of the LOR until Monday, 12 February 2024," and that when she then requested the reprimand, the member's rebuttal, and the attachments needed to initiate the DAF Form 1058 and the AF Form 1137, "[t]he 14-day requirement was already passed at this point." The Unfavorable Information File form was not signed by Lieutenant Colonel Lloyd until February 21, 2024, and was not presented to Major Schilperoort until February 22, 2024, forty-eight days after the reprimand issued.

63. The reprimand asserted that Major Schilperoort had "not only harmed good order and discipline, but . . . compromised mission readiness." The assertion was false. Throughout the relevant period his commanders would not permit him to fly on account of his unvaccinated status, independent of his medical flying status, and during the stretches when he was medically cleared to fly, his lack of the influenza and COVID-19 vaccines was the only thing keeping him from the cockpit. He was performing the duties of the 41st Resource Advisor and the 41st Assistant Director of Operations, and none of those duties were affected by his not having received the influenza vaccine. He said so in his written response to the reprimand on January 24, 2024. The commander upheld the reprimand a week later without addressing the point. No Air Force authority has ever identified a readiness consequence, a case of influenza, or any other harm attributable to Major Schilperoort's unvaccinated service.

64. The command separately charged that Major Schilperoort's refusal of the influenza vaccine had cost the unit a deployment, asserting that another member had to deploy in his place. At the time of that deployment window Major Schilperoort was medically ineligible to deploy for reasons unrelated to vaccination, so his unvaccinated status determined nothing. The charge attributed to his religious objection a consequence that his objection did not cause.

**The 2024 retaliation and discharge board**

65. Major Schilperoort submitted three protected communications: an Inspector General complaint, a Military Equal Opportunity complaint, and a Congressional inquiry filed with his federal representative on May 12, 2024. Seven days later, on May 19, 2024, and without any intervening order to receive the influenza vaccine, Lt Col Lloyd recommended him for discharge. The wing commander endorsed the recommendation the next day. On June 3, 2024, the commander of the Eighteenth Air Force initiated involuntary discharge proceedings against him. The stated basis was two sentences: that Major Schilperoort had been ordered to receive the influenza vaccine, and that he had refused. The Air Force characterized that refusal as a failure "to acceptably discharge his duties" and as "serious or recurring misconduct punishable by military or civilian authorities." The general officer who initiated the action recommended that Major Schilperoort's service be characterized as Under Honorable Conditions (general), a discharge below Honorable, and advised that the Secretary of the Air Force could approve a characterization as low as Under Other Than Honorable Conditions**.** In October 2024, a Board of Inquiry convened and voted to discharge him. It found that the flu-vaccine allegation formed a basis for discharge. It found that a separate allegation of unprofessional conduct did not.

**The 2025 stripping of his pay**

66. In March 2025, while his appeal from the Board of Inquiry was pending before the Secretary of the Air Force, Major Schilperoort was given two and one-half business days' notice to complete the week-long Transition Assistance Program and out-process, and was placed on Involuntary Excess Leave, a no-pay, no-allowances status, for three months. The decision to place him on that status rested on the board's discharge decision, which in turn rested on the Letter of Reprimand. The loss of pay caused significant financial hardship for him and his family.

67. On June 25, 2025, the Office of the Secretary of the Air Force overrode the Eighteenth Air Force commander's decision and restored Major Schilperoort to paid status. Twelve days later, on July 7, 2025, his new squadron commander, Lieutenant Colonel Boston McClain III, suspended him from aviation service and flight-pay eligibility under Aviation Service Code 04, citing DAFMAN 11-402. The suspension stripped his monthly flight pay and left his aviation continuation bonus for that year unpaid. It issued weeks after the Secretary had moved to restore his career.

**The Air Force's own review authorities substantiated the discrimination.**

68. On August 13, 2025, the Inspector General of the Department of the Air Force substantiated Major Schilperoort's complaint. The Directorate of Complaints Resolution referred both of his religious accommodation requests to the Department of the Air Force Chief of Chaplains and to the Air Force Surgeon General for review. Both determined that the December 27, 2023 request contained additional relevant information and that Major Schilperoort held a sincerely held religious belief. The Inspector General accordingly found that his commander "did not take required actions" on the request and that it was "not processed as

required by DAFI 52-201." The Inspector General further found that the commander "improperly included information that you failed to receive the 2022 influenza vaccine in the 5 Jan 2024 LOR," because that vaccine was no longer available when the reprimand issued. The commander had reprimanded Major Schilperoort, in part, for failing to receive a vaccine that did not exist.

69. Two weeks later, the Director of the Air Force Review Boards Agency substantiated his Equal-Opportunity complaint, overruling the earlier "not substantiated" finding as "not supported by a preponderance of evidence." The Director found that Major Schilperoort "was discriminated against on the basis of religion when his commanding officer . . . issued Appellant a Letter of Reprimand . . . for failure to comply with an order to take the influenza vaccine"; that the commander "issued the Letter of Reprimand knowing Appellant had submitted a religious accommodation request which was not acted upon"; and that Major Schilperoort "was temporarily exempted from the influenza vaccination immunization compliance while his December 27, 2023, religious accommodation request was pending."

70. On March 17, 2026, the Board for Correction of Military Records granted relief. On June 5, 2026, it issued a corrected decision. The Board found that Major Schilperoort "is the victim of an error or injustice," that his command "violated DAFI 52-201 by not processing the applicant's second RAR," and that "the unit's failure to process the applicant's second RAR, and the majority of the adverse actions taken against him that led to a BOI and subsequent recommendation for involuntary discharge, were unlawful." It directed that the Letter of Reprimand be removed from his record, that all documents associated with the discharge and the Board of Inquiry and all negative paperwork in his record be removed, that the referral officer performance brief be declared void, and that the "Do Not Promote" promotion recommendation

be removed by order of the Chief of Staff of the Air Force. It directed that he be restored to active duty and flying status retroactive to March 24, 2025, that his lost leave and pay be restored, and that he be granted Special Selection Board consideration for the two Lt Col Central Selection Boards from which he had been excluded.

71. The Board had no authority to promote him at his rank; that relief lies only with a Special Selection Board, and he has not been promoted. It also directed that his medical record reflect an administrative exemption from the influenza vaccine beginning December 27, 2023, and that he "will remain in an exempted status for 90 days from the date of this directive to provide him the opportunity to submit a new RAR or receive the required influenza vaccine." The corrected directive issued on June 5, 2026. That ninety-day period expires in early September 2026. When it does, Major Schilperoort must either submit a new religious accommodation request, to be adjudicated by the Department whose handling of his last request produced the reprimand, the discharge board, and the loss of his pay, or receive the vaccine his faith forbids.

72. The Air Force Review Boards Agency's determination confirms the protection stated in paragraph 2.12: while an immunization accommodation request is pending, the member is temporarily exempt from the obligation to receive the immunization. Discipline predicated solely on a member's failure to receive that immunization during the pendency of the request conflicts with paragraph 2.12. That is the Government's own conclusion, and it is the protection at the center of the claims of Plaintiff Leiby. Any separate operational restriction on an unvaccinated member remains subject to the Religious Freedom Restoration Act and to the regulation's individualized least-restrictive-means standard.

**Continuing consequences and current requirement**

73. Major Schilperoort faces the requirement now. The Board for Correction directed that he remain exempt from the influenza vaccine for ninety days from its corrected directive of June 5, 2026, after which he must submit a new religious accommodation request or receive the vaccine. That exemption expires in early September 2026. He has not been ordered to receive the vaccine within that window, and the seasonal influenza vaccination window at his installation is presently closed; if he is ordered to vaccinate this fall, he will submit a new religious accommodation request. Any such request will be adjudicated by the Department whose Inspector General has already found that it failed to process his last one as the regulation required, and whose Review Boards Agency has already found that it discriminated against him on the basis of religion. He is also subject to the influenza requirement reinstated by the June 11, 2026 Exception to Policy for Air Mobility Command aircrew assigned to United States Transportation Command taskings. Major Schilperoort flies such taskings as a matter of course, in some months multiple times, and the requirement attaches each time he is so tasked and whenever he is placed on alert status. The anthrax requirement attaches upon any deployment tasking.

74. The relief the Board for Correction ordered has not been delivered. The Board directed that Major Schilperoort be restored to flying status. Because he had by then been out of the cockpit for more than three years, Air Mobility Command determined that regulation required him to complete the full C-130J requalification course before returning to flight. He is only now beginning that course and is not expected to be cleared to fly an operational mission until 2027. The Board also directed that the "Do Not Promote" recommendation be removed from his record by order of the Chief of Staff of the Air Force, and granted him Special Selection

Board consideration for the two Lt Col Central Selection Boards from which he had been excluded. He has been selected for a board that has not yet convened, expected to meet in September or early October 2026. He has not been promoted.

75. Three individual service members have now come forward in this case. But they are not alone. Other service members across the military, including members of the Children's Health Defense Military Chapter community, have experienced the same delays, non-decisions, and regrettably, they have suffered the same adverse consequences to their careers while serving their country. The treatment of religious accommodation requests reflected in this case is part of a broader pattern across the military. This lawsuit seeks to expose, challenge, and remedy these failures. It is no small irony that our warriors who have dedicated their lives to protecting the freedoms of us all must fight their own government to protect their own.

**COUNT I**

**Agency Action Unlawfully Withheld and Unreasonably Delayed**
**Administrative Procedure Act, 5 U.S.C. §§ 555(b), 706(1)**
**(Plaintiffs Leiby and Puckett)**

76. Plaintiffs reallege and incorporate by reference the preceding paragraphs.

77. A court shall "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), where the agency has failed to take "a discrete agency action that it is required to take." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). The duty is located in the law that prescribes the action. The Administrative Procedure Act independently requires that "[w]ithin a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b).

78. An agency is bound by the rules it has adopted to govern its own conduct, including rules it was not required to adopt. *Service v. Dulles*, 354 U.S. 363, 388–89 (1957);

*United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267–68 (1954). DAFI 52-201 uses mandatory terms, identifies the responsible decision authorities, fixes compliance periods, requires written notice, and expressly limits waiver authority. The Department's own review authorities have treated its provisions as binding and have corrected records to conform to them.

79. The action Plaintiffs seek is the action the regulation requires: one decision, on one request or appeal, reduced to writing. Plaintiffs do not ask the Court to direct how either matter should be decided.

**The prescribed periods expired without the prescribed action.**

80. DAFI 52-201 prescribes the required action. Paragraph 2.8 and Table 2.1 fix the period for adjudicating an initial request and designate that timing obligation T-0. Paragraph 2.10 separately requires that an appeal be resolved within thirty business days and designates that requirement T-1. The instruction requires written notification of the decision, and GM2026-01 requires a written Record of Decision whether the request is approved or denied. The decisions sought on this Count were therefore unlawfully withheld within the meaning of 5 U.S.C. § 706(1) when the prescribed periods expired.

81. Lieutenant Colonel Leiby submitted his religious accommodation request on May 29, 2023. On December 21, 2023, the multidisciplinary Religious Resolution Team the regulation then prescribed, comprising the commander or a designee, a chaplain, a judge advocate, and a medical provider, completed its review and unanimously recommended approval, concluding that less restrictive means existed to accomplish the Government's compelling interest. The Air Force has not granted the request and has not denied it. The period has expired under either track of Table 2.1.

82. Staff Sergeant Puckett appealed the denial of her request to the Air Force Surgeon General on October 8, 2025, the day after the denial issued, and filed the appeal through her chain of command as the denial directed. The Surgeon General is the final appeal authority for immunization accommodation decisions. Paragraph 2.10 requires resolution within thirty business days, and designates that requirement T-1. No decision has issued during the more than nine months since the appeal was filed.

83. Independently, the delay is unreasonable under 5 U.S.C. § 555(b), assessed against the six considerations set out in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984). The first is that "the time agencies take to make decisions must be governed by a rule of reason," the consideration the D.C. Circuit has described as the most important. *Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 816 (D.C. Cir. 2024). The second, that a timetable in the governing scheme "may supply content for this rule of reason," gives content to the first. *Id.*; *In re United Mine Workers of America International Union*, 190 F.3d 545, 549 (D.C. Cir. 1999). The Air Force set the timetable itself and did not meet it.

84. Defendants have communicated no explanation for either delay. They have not told Lieutenant Colonel Leiby or Staff Sergeant Puckett that the delay is attributable to a backlog of religious accommodation requests, a shortage of adjudicators, a competing obligation, or a need for additional evidence.

85. No further adjudicative work remains on Lieutenant Colonel Leiby's request. The review the regulation prescribed was completed on December 21, 2023, and it recommended approval. No decision authority has rejected that recommendation, supplied a contrary individualized analysis, or explained any departure from it. What remains is the decision itself.

86. Nor is his request in a queue. Under Guidance Memorandum GM2026-01, the Air Force was required either to complete the package, if it had reached Headquarters Air Force, or to return it to him for resubmission, if it had not. It did neither. Lieutenant Colonel Leiby has received no written notice of approval, denial, completion, or return, and no decision authority has told him that his request is awaiting adjudication. Guidance Memorandum GM2026-01 also eliminated the Religious Resolution Team, the multidisciplinary body the regulation had prescribed to develop the record on which the least-restrictive-means determination would be made, directing that such teams "will no longer be used in the processing, review, or adjudication of any religious accommodation requests." GM2026-01, Attachment 2, ¶ 1.1.7.

87. Staff Sergeant Puckett's appeal is pending on a closed record. Neither she nor her chain of command has been asked for additional material, and she has been notified of no panel, no investigator, and no further evidentiary step.

88. The delay injures each of these Plaintiffs independently of how the matters are ultimately decided. Lieutenant Colonel Leiby has been carried on temporary exemptions that lapse and must be renewed at the discretion of those who issue them, and his request remains undecided. Staff Sergeant Puckett has been ordered to vaccinate, disciplined three times, and denied a promotion package, and remains subject to the requirement. Each remains within a chain of command that may order the vaccine, and each is protected in the interim only by a regulation the Department has not honored. DAFI 52-201 ¶ 2.12.

**Relief requested on this Count**

89. Plaintiffs request that the Court order the Secretary of the Air Force to cause the appropriate decision authority to adjudicate Lieutenant Colonel Leiby's May 29, 2023 religious accommodation request and issue the written decision the regulation requires, or, if Defendants

contend Guidance Memorandum GM2026-01 required its return, to return it in writing and adjudicate the resubmission, within a time certain set by the Court; and order the Surgeon General of the Air Force to resolve Staff Sergeant Puckett's October 8, 2025 appeal and to issue the written decision the regulation requires, or, if Defendants contend Guidance Memorandum GM2026-01 required its return, to return it to her in writing and adjudicate the resubmission, within a time certain set by the Court.

90. In the alternative, Plaintiffs request that the Court retain jurisdiction and direct Defendants to file periodic status reports until the request and the appeal have been decided.

**COUNT II**

**Violation of the Religious Freedom Restoration Act**
**42 U.S.C. § 2000bb-1**
**(All Plaintiffs)**

91. Plaintiffs reallege and incorporate by reference the preceding paragraphs.

92. The Religious Freedom Restoration Act provides that the Government "shall not substantially burden a person's exercise of religion" unless it demonstrates that the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(a)–(b). The statute applies to the military. It creates a claim for relief and a defense in any judicial proceeding, and entitles a person whose religious exercise has been burdened to appropriate relief. *Id.* § 2000bb-1(c).

93. Generalized invocation of military interests does not substitute for the claimant-specific showing Congress required. *Singh v. Berger*, 56 F.4th 88, 92, 97–107 (D.C. Cir. 2022). The Government must demonstrate that applying the challenged vaccination requirement to each

Plaintiff furthers a compelling governmental interest and is the least restrictive means of furthering that interest as to that Plaintiff. *Gonzales v. O Centro Espírita Beneficente União do Vegeta*l, 546 U.S. 418, 430–31 (2006).

**Sincere religious belief**

94. Each individual Plaintiff holds a sincere religious belief that forbids him or her to receive the vaccines at issue. In each case the Department's own personnel affirmed that sincerity. The chaplains who interviewed Lieutenant Colonel Leiby and Staff Sergeant Puckett found or corroborated the sincerity and religious nature of their beliefs. The Air Force's denial of Lieutenant Colonel Leiby's COVID-19 request expressly found his belief sincere before denying the request. The Religious Resolution Team that reviewed Staff Sergeant Puckett's request found her belief sincere and religious in nature, as did her flight surgeon and her squadron commander. As to Major Schilperoort, the Department of the Air Force Chief of Chaplains and the Air Force Surgeon General each reviewed his religious accommodation request and determined that he held a sincerely held religious belief, and the Air Force Review Boards Agency found that he had been discriminated against on the basis of religion.

**Substantial burden**

95. Compelling a service member to receive a vaccination his or her religion forbids, on pain of adverse action, is a substantial burden on religious exercise. So is placing substantial pressure on a member to act contrary to that belief. The Air Force's own regulation so provides. DAFI 52-201 ¶¶ 2.2.3.1–2.2.3.3. Each Plaintiff bears such a burden, and the burden each bears is his or her own. And under the amended instruction, "Members denied a vaccination accommodation request are required to receive the vaccine after their appeal is exhausted." GM2026-01, Attachment 2, ¶ 5.8.6.

96. Lieutenant Colonel Leiby's ability to decline the vaccinations his faith forbids depends on temporary administrative exemptions that lapse and must be renewed. When one lapsed, his immunization-readiness status was marked deficient and he was required to obtain a renewal to correct it. He holds no accommodation. He holds a series of reprieves, granted at the discretion of those who administer them, any one of which may not be renewed. That is substantial pressure.

97. Staff Sergeant Puckett has been ordered to vaccinate, disciplined three times, and denied the opportunity to submit a promotion package. She holds no approved exemption of any kind and never has: the medical exemption she sought on the basis of her pregnancy was denied. She remains subject to the vaccination requirements from which she sought accommodation, and her appeal from that denial has been undecided for more than nine months.

98. Major Schilperoort was reprimanded, referred to a discharge board, and placed in a no-pay status, all traceable to his refusal to receive a vaccine his faith forbids. He has not been promoted. Under the Board for Correction's directive his administrative exemption expires in early September 2026, at which point he must submit a new religious accommodation request or receive the vaccine. He remains subject to the Department that produced those consequences, and to influenza and anthrax vaccination requirements.

**The Department's own records require a claimant-specific justification it has not supplied.**

99. The Department bears the burden of demonstrating, as to each Plaintiff individually, that the vaccination requirement is the least restrictive means of furthering a compelling governmental interest. Its own records defeat that showing.

100. The Department's own prescribed reviewers concluded that less restrictive means existed, and no decision authority has rejected those recommendations with a claimant-specific

analysis of its own. The Religious Resolution Team unanimously recommended approval of Lieutenant Colonel Leiby's request, concluding that less restrictive means existed. The chaplain, the flight surgeon, and the squadron commander who reviewed Staff Sergeant Puckett's request each recommended approval, and her squadron commander wrote afterward that the Religious Resolution Team had overstated his position, that any impact was one the accommodation "could" have rather than one it "would" have, and that "there has been no such impact since she began her request." Those recommendations concern the same claimants, the same vaccines, and the same disease characteristics at issue now, and require a claimant-, vaccine-, and mission-specific explanation before the deciding authority may reject them.

101. As to Major Schilperoort, the Department has already demonstrated its capacity to accommodate him. On September 28, 2023, the Surgeon General granted him a religious accommodation as to the tetanus-diphtheria vaccine and denied one as to the influenza vaccine, in a single memorandum, resting on a single religious belief. The approval was individually tailored, conditioned on his not being tasked to austere locations. That decision establishes that the Surgeon General accepted the sincerity of his belief and was capable of fashioning a conditional, claimant-specific accommodation for him. It does not itself compel the same result for a different vaccine. It does require that any denial as to influenza rest on a vaccine-specific, claimant-specific explanation of why no conditional or alternative accommodation would suffice. No Air Force authority identified any concrete impact on Major Schilperoort's actual duties, unit readiness, health, or safety during the relevant period.

**The denials were not individualized**

102. Where the Department has denied these requests, it has repeatedly employed formulaic least-restrictive-means conclusions across materially different claimants, vaccines,

duties, and assignments. The Air Force Surgeon General denied Major Schilperoort's influenza accommodation with a formulaic conclusion that no less restrictive means were available, in the very memorandum in which he granted him an individually tailored accommodation for another vaccine. Staff Sergeant Puckett's denial recited a form conclusion that no less restrictive means were possible, on a record her own squadron commander had written to correct. Formulaic conclusions, particularly where the same office has shown itself capable of individualized analysis for the same claimant, do not discharge the Government's claimant-specific burden. *O Centro*, 546 U.S. at 430–31.

103. The Department also denied Staff Sergeant Puckett's request on a ground the Religious Freedom Restoration Act does not permit. The Religious Resolution Team's advisement records that the Deputy Wing Chaplain "determined the request was based on specific doctrine, but it did not mention the necessity of practicing within a faith community," and that this "does not meet the DoD requirements for religious accommodation." Four paragraphs later the same memorandum records that the Team "determined that this request was both sincere and religious in nature." The Department thus found Sergeant Puckett's belief sincere and religious, and then withheld accommodation because she does not practice within a congregation. Neither the statute nor the regulation conditions religious exercise on communal worship. The Act protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. §§ 2000bb-2(4), 2000cc-5(7)(A). DAFI 52-201 defines the exercise of religion in the same terms. A judgment that a claimant's theology is insufficiently communal is not a finding about readiness, cohesion, discipline, health, or safety. It is an assessment of the adequacy of her faith, which the Government may not make.

104. The Department cannot contend that individualized assessment is beyond its capacity. Its Inspector General referred Major Schilperoort's requests to the Chief of Chaplains and to the Surgeon General; both offices reviewed them and found his belief sincere. The Department possesses both the institutional expertise and the practical ability to conduct an individualized assessment promptly. What it did not do was conduct one before reprimanding him, referring him to a discharge board, and taking his pay.

**Relief requested on this Count**

105. Plaintiffs request a declaration that Defendants' substantial burdening of their religious exercise violates the Religious Freedom Restoration Act unless Defendants satisfy strict scrutiny as to each Plaintiff; an injunction prohibiting Defendants from requiring the individual Plaintiffs to receive the vaccines to which they have sought religious accommodation, and from taking adverse action against them for declining to do so, unless and until Defendants demonstrate, as to each Plaintiff individually, that the particular requirement or action is the least restrictive means of furthering a compelling governmental interest; and such other relief as the Court deems appropriate under 42 U.S.C. § 2000bb-1(c).

## COUNT III

### Denial and Nonadjudication of Religious Accommodation Under a System of Individualized Exemptions
### First Amendment, Free Exercise Clause
### (and, in the alternative as to Major Schilperoort, the Equal Protection component of the Fifth Amendment)
### (All Plaintiffs)

106. Plaintiffs reallege and incorporate by reference the preceding paragraphs.

107. A policy burdening religious exercise is subject to strict scrutiny unless it is both neutral and generally applicable. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508

U.S. 520, 531–32 (1993). A policy is not generally applicable if it "invite[s]" the government to consider the particular reasons for a person's conduct by providing "'a mechanism for individualized exemptions,'" and the government may not "refuse to extend that system to cases of 'religious hardship' without compelling reason." *Fulton v. City of Philadelphia,* 593 U.S. 522, 533 (2021). The existence of the discretionary mechanism is what defeats general applicability. *Id*. at 537. Independently, a policy is not generally applicable if it treats comparable secular conduct more favorably than religious conduct, with comparability assessed against the asserted government interest. *Tandon v. Newsom*, 593 U.S. 61, 62 (2021) (per curiam).

**A. The Department administers its immunization requirement through a system of individualized exemptions**

108. By regulation, the Department evaluates each request for exemption from a vaccination requirement on its own facts, and grants or denies it based on an assessment of the particular member's circumstances. Air Force Instruction 48-110_IP provides for medical exemptions, resting on an individualized clinical assessment, and for administrative exemptions granted for individual circumstances. Having created a mechanism that invites officials to weigh the particular reasons a particular member advances for not receiving a vaccine, the Department may not refuse to extend that mechanism to religious hardship without satisfying strict scrutiny. *Fulton v. City of Philadelphia*, 593 U.S. 522, 533–34 (2021).

**B. The Department tolerates for secular reasons the same risk it invokes to deny religious requests**

109. The Department deferred Staff Sergeant Puckett from worldwide duty for twelve months following the birth of a child. That deferment required no accommodation request, no chaplain interview, no multidisciplinary review team, no wing commander endorsement, no

major-command decision, and no appeal; it attached by operation of the instruction, and only she could waive it. DAFI 36-2110 ¶ 6.18.4 (T-1). The Air Force designates that deferment a T-1 compliance requirement, and it designates the thirty-business-day deadline for resolving a religious accommodation appeal a T-1 compliance requirement as well. DAFI 52-201 ¶ 2.10. It honored the first automatically. It has not honored the second in the more than nine months since Sergeant Puckett filed her appeal.

110. The Department's stated interest is the health, safety, and readiness of the force. That interest is not implicated differently by an unvaccinated member whose reason is medical or administrative than by an unvaccinated member whose reason is religious. The risk to the force is the same; only the reason differs. *Tandon,* 593 U.S. at 62 (2021). Staff Sergeant Puckett has continued to serve unvaccinated, in the same assignment and performing the same duties, without any of the consequences the Department invokes to justify denying her religious request. Her own squadron commander, who sat on the Religious Resolution Team, wrote afterward that "there has been no such impact since she began her request."

111. Guidance Memorandum GM2026-01 requires that a denial of a sincere, substantially burdened request explain why a religious waiver is refused where comparable non-religious waivers have been granted, and directs that a waiver sought for religious reasons should not be denied if a waiver to the same standard is granted for non-religious reasons. It further requires the commander evaluating a vaccination request to state the number of personnel in the unit performing the same or similar duties who hold medical waivers for that vaccine. Those requirements govern the requests and the appeal that remain pending. The Air Force has issued no decision reflecting the required comparisons, and none has been communicated to Plaintiffs. Plaintiffs do not contend that denials issued before May 14, 2026 violated a memorandum that

had not yet issued. They contend that those earlier denials were not individualized, as the Religious Freedom Restoration Act and the regulation then in effect required.

**C. Strict scrutiny applies, and the Department has not attempted to satisfy it**

112. Because the policy is not generally applicable, the Department must show that denying these Plaintiffs an exemption is narrowly tailored to a compelling interest, assessed as to each Plaintiff. It has not made that claimant-specific showing. The Department's own reviewer findings recited in Count II, its review team's recommendation to approve the request of Lieutenant Colonel Leiby, its squadron commander's correction of the record as to Staff Sergeant Puckett, and its Surgeon General's individually tailored accommodation of Major Schilperoort, apply with equal force here and remain undisturbed.

**D. In the alternative as to Major Schilperoort: equal protection**

113. Plaintiffs plead in the alternative under Rule 8(d)(2) that, to the extent the Court concludes that the Free Exercise Clause does not reach the conduct alleged as to Major Schilperoort, the same treatment denies him the equal protection of the laws guaranteed by the Due Process Clause of the Fifth Amendment. The Air Force Review Boards Agency found that Major Schilperoort was discriminated against on the basis of religion. The Inspector General found that his commander did not take the actions the instruction required on his religious accommodation request. The Board for Correction of Military Records found error or injustice, found that his command violated DAFI 52-201, found that the adverse actions taken against him were unlawful, and corrected his records and his pay. The Department has offered no justification, compelling or otherwise, for that treatment.

**Relief requested on this Count**

114. Plaintiffs request a declaration that Defendants' application of the vaccination and exemption policies to the individual Plaintiffs, granting exemptions for secular reasons while denying or refusing to decide their comparable religious exemption requests, violates the Free Exercise Clause; and an injunction prohibiting Defendants from applying those requirements to the individual Plaintiffs, and from taking adverse action against them, unless Defendants satisfy strict scrutiny as to each of them individually.

**RESERVATION OF CLAIM UNDER 5 U.S.C. § 706(2)**

115. No Plaintiff has received a final, reviewable decision on the pending request or appeal for which prospective adjudicatory relief is sought in this First Amended Complaint. Because the Department has not acted on those matters, there is no final agency action for this Court to review under 5 U.S.C. § 706(2), and Plaintiffs do not presently plead a claim under that provision. Should the Department complete the prescribed administrative process and issue a final decision on any pending request or appeal, Plaintiffs reserve the right to seek leave to amend to add a claim under 5 U.S.C. § 706(2) that the decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

**On Count I (Agency Action Unlawfully Withheld and Unreasonably Delayed, 5 U.S.C. §§ 555(b), 706(1)):**

116. Order the Secretary of the Air Force to cause the appropriate Department of the Air Force decision authority to adjudicate Lieutenant Colonel Leiby's May 29, 2023 religious

accommodation request and issue the written decision the regulation requires, within a time certain set by the Court; or, if Defendants contend that Guidance Memorandum GM2026-01 required the return of that request rather than its completion, to return it to him in writing and to adjudicate his resubmitted request within a time certain set by the Court;

117. Order the Surgeon General of the Air Force to decide Staff Sergeant Puckett's October 8, 2025 appeal and to issue the written decision the regulation requires, within a time certain set by the Court; or, if Defendants contend that Guidance Memorandum GM2026-01 required the return of that appeal rather than its completion, to return it to her in writing and to adjudicate her resubmitted request within a time certain set by the Court;

**On Count II (Religious Freedom Restoration Act):**

118. Declare that Defendants' substantial burdening of the individual Plaintiffs' religious exercise, including by failing to provide the timely individualized adjudication the regulation requires and by imposing the adverse consequences alleged herein, violates the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1, unless Defendants satisfy strict scrutiny as to each Plaintiff individually;

119. Enjoin Defendants from requiring the individual Plaintiffs to receive the vaccinations to which they have sought religious accommodation, unless and until Defendants demonstrate, as to each Plaintiff individually, that vaccination is the least restrictive means of furthering a compelling governmental interest;

120. Enjoin Defendants from taking, or continuing, any adverse personnel action against the individual Plaintiffs on account of their religious exercise or their refusal to receive those vaccinations, including any denial of deployment, assignment, training, promotion consideration, or flight status, and including any separation or discharge proceeding, unless

Defendants demonstrate that the particular action, as applied to the particular Plaintiff, is the least restrictive means of furthering a compelling governmental interest;

121. Order Defendants to rescind and expunge from the individual Plaintiffs' records each adverse action taken against them on account of their religious exercise or their refusal to receive the vaccinations at issue, including any letters of reprimand, admonishment, or counseling, Article 15 proceedings, courts-martial, referral evaluation, non-promotion recommendation, discharge-board record, readiness or assignment code, or other annotation identified in this Complaint, that has not already been removed pursuant to the June 5, 2026 corrected directive of the Board for Correction of Military Records;

122. Order Defendants to give effect to the Board for Correction of Military Records' directive restoring Major Schilperoort to flying status retroactive to March 24, 2025;

123. Order Defendants to provide Major Schilperoort the Special Selection Board consideration the Board for Correction directed, for each Lt Col Central Selection Board from which he was excluded, without reference to the Letter of Reprimand, the referral officer performance brief, the "Do Not Promote" recommendation, the discharge proceedings, or any derivative material, all of which the Board for Correction has ordered removed;

124. Enjoin Defendants from requiring Major Schilperoort to receive the influenza vaccine, and from taking any adverse action against him for declining to receive it, upon the expiration of the ninety-day period prescribed by the Board for Correction's June 5, 2026 corrected directive, unless and until Defendants adjudicate the religious accommodation request he submits and demonstrate, as to him individually, that requiring the vaccine is the least restrictive means of furthering a compelling governmental interest;

**On Count III (Free Exercise Clause; in the alternative, Equal Protection):**

125. Declare that Defendants' application of the vaccination and exemption policies to the individual Plaintiffs, granting exemptions for secular reasons while denying, or refusing to decide, their comparable religious exemption requests, violates the Free Exercise Clause of the First Amendment;

126. Enjoin Defendants from applying vaccination requirements to the individual Plaintiffs, and from taking adverse action against them for declining vaccination, unless Defendants satisfy strict scrutiny as to each Plaintiff individually;

127. Declare, in the alternative and as to Major Schilperoort, that the same treatment denies him the equal protection of the laws guaranteed by the Due Process Clause of the Fifth Amendment;

**General:**

128. Retain jurisdiction to ensure compliance with the Court's orders;

129. Award Plaintiffs their costs and reasonable attorneys' fees as provided by law; and

130. Grant such other and further relief as the Court deems just and proper.

Dated: July 24, 2026

Respectfully submitted,
/s/ Richard Jaffe
Richard Jaffe

428 J Street, 4th Floor
Sacramento, CA 95814
Tel: 916-492-6038
rickjaffeesquire@gmail.com
CA Bar No. 289362
DC District Court ID No. CA00224

Attorney for Plaintiffs